UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

IN RE:   DAVID B. JONES and
LINDA S. JONES

INTERNAL REVENUE SERVICE,

    Appellant,

v.                                        Case No.  8:07-cv-515-T-JSM

DAVID B. JONES and LINDA S. JONES,

    Appellees.
_____/

## ORDER

THIS CAUSE came before the Court upon oral argument on November 7, 2007, concerning a bankruptcy appeal of Adversary Case No. 8:05-ap-486-PMG.  The Court, having heard the oral argument of the parties, and upon consideration of the bankruptcy record (Dkt. #1), Appellant's Brief (Dkt. #5), *pro se* Appellee's Brief (Dkt. #12), and being otherwise advised in the premises, concludes that the Bankruptcy Court's Findings of Fact, Conclusions of Law, and Memorandum Opinion and Final Judgment should be affirmed.

**I.**    **Background.**

In 1986, David Jones ("Mr. Jones") purchased and began to operate a Toyota dealership in South Carolina named Magic Toyota, Inc., a solely-owned corporation ("Magic Toyota").  On April 1, 1991, Mr. Jones and Magic Toyota filed a Complaint (the "Magic

Toyota Lawsuit") against Southeast Toyota Distributors, Inc. ("Southeast").[1] The Magic Toyota Lawsuit arose from the purchase and operation of the Toyota dealership. Subsequently, Mr. Jones and Magic Toyota filed an Amended Complaint in the Magic Toyota Lawsuit. The Amended Complaint contained six counts: (1) Breach of contract; (2) Violation of South Carolina Code Section 39-5-10 regarding unfair competition and deceptive trade practices; (3) Violation of the Racketeer Influenced and Corrupt Organizations Act; (4) Fraud; (5) Actual and punitive damages for unfair competition and deceptive practices; and (6) Injunctive relief.

The Magic Toyota Lawsuit was settled on or about May 28, 1993. On June 24, 1993, Mr. and Mrs. Jones (together, the "Joneses") signed a General Release. In the General Release, the Joneses released Southeast from "any and all claims, causes of action, suits and demands whatsoever in law or in equity." On June 28, 1993, the Joneses signed a document entitled "Settlement Agreement" that was filed in the District Court. Pursuant to the document, the Joneses authorized their attorneys to settle their individual claims in the Magic Toyota Lawsuit for the sum of $4,360,417.00. On the same date, a settlement check was issued to the Joneses in the amount of $2,719,879.00. A separate settlement check was issued to Magic Toyota in the amount of $866,773.00.

---

[1] Mr. Jones's wife, Linda Jones, was not named as a plaintiff within the Magic Toyota Lawsuit. Mr. Jones testified that he purposely did not want to involve his wife in the litigation in order to shield her from depositions or further contact with Defendant and its lawyers.

On August 11, 1993, Mr. Jones's attorney wrote a letter to Mr. Jones, which stated, in pertinent part:

> I spoke with Taylor Ward [Southeast's attorney] today who approved the change of language in your General Release to incorporate language that the payment to you and Linda was for your personal injuries, which was always the intent of the settlement and original release. This change of language does not modify the release agreement at all, it simply states expressly what was otherwise implied from the language of "all claims, causes of action, suits and demands whatsoever in law or in equity..."[2]

On August 12, 1993, the Joneses signed two documents. First, they signed a Settlement Agreement which was intended to resolve all disputes between the Joneses, Magic Toyota and Southeast. Second, they signed a revised general release on August 12, 1993 (the "Revised General Release"). The Revised General Release provided that David and Linda Jones would receive the payment of $4,360,417.00 "for their personal injuries" and Magic Toyota would receive $1,359,583.00 in consideration for the release of Southeast "from any and all claims, causes of action, suits and demands whatsoever in law or in equity."[3]

On April 14, 1994, the Joneses signed their Form 1040 Individual Income Tax Return for the 1993 tax year (the "Return"). The Return was prepared by a Certified Public Accountant. A supporting schedule of other income was attached to the Return identifying the sum of $4,360,417.00 that was received by the Joneses from Southeast. The schedule then subtracts the full amount of the income as "amount awarded for personal injury under IRC Sec 104." A copy of the Revised General Release was attached to the Return.

---

[2] IRS Exhibit #19, Transmittal of Record on Appeal (Dkt. #1).

[3] IRS Exhibit #15, Transmittal of Record on Appeal (Dkt. #1).

On February 19, 1997, the IRS wrote a letter to the Joneses in which it asserted that the receipt of the settlement amount was taxable income that should have been reported on the Return. On April 7, 1997, the IRS issued a Notice of Deficiency regarding the Return. In the notice, the IRS identified a tax deficiency in the amount of $1,722,536.00, plus certain additions to the tax in the amount of $344,507.00.

On February 15, 1999, Mr. Jones transferred certain real property located in Polk County, Florida to Payday Cars, Inc. Mr. Jones testified that the property consisted of a warehouse that he had purchased on November 29, 1994. Although he had initially acquired the property in his individual name, Mr. Jones testified that the warehouse had been purchased to house the operations of Payday Cars, and that Payday Cars had always used the property. Mr. Jones is the sole owner of Payday Cars, Inc.

On February 17, 1999, the Joneses executed a Quitclaim Deed of certain real property in Tennessee to Mr. Jones's mother and sister. Mr. Jones testified that he contributed $30,000.00 in 1995 to purchase the property as a home for his mother upon her retirement. Even though the property was initially titled in his name, his mother made all the payments on the house since it was purchased, and invested her own personal funds for improvements to the property.

On May 19, 2005, the Joneses filed a petition in bankruptcy under Chapter 7. On June 13, 2005, the Joneses filed an adversary complaint seeking a determination that their 1993 federal income tax liability, which had been assessed after examination of their joint return, was dischargeable pursuant to 11 U.S.C. §727. The United States argued that the 1993

federal income tax liability was excepted from discharge by §523(a)(1)(C), because the facts demonstrated that the Joneses willfully attempted to defeat the tax liability at issue. After conducting a final evidentiary hearing, the Bankruptcy Court entered judgment in favor of David and Linda Jones on February 14, 2007. On February 15, 2007, the United States filed its notice of appeal.

**II.     Standard of Review.**

The United States District Court functions as an appellate court in reviewing decisions of the United States Bankruptcy Court. *See In re Colortex Indus., Inc.*, 19 F.3d 1371, 1374 (11th Cir. 1994). While the court reviews *de novo* the legal conclusions of a bankruptcy court,[4] under Federal Rule of Bankruptcy Procedure 8013, "findings of fact, whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the bankruptcy court to judge the credibility of the witnesses." *In re Thomas*, 883 F.2d 991, 994 (11th Cir. 1989). A finding of fact is clearly erroneous when the Court finds that "although there is evidence to support [the Bankruptcy Court's] finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948). The burden of showing clear error when clear error is alleged falls on the party seeking to overturn a bankruptcy court's findings. *In re Caribbean K. Line, Ltd.*, 288 B.R. 908, 911 (S.D. Fla. 2002).

---

[4] *See In re Optical Techns., Inc.*, 425 F.3d 1294, 1300 (11th Cir. 2005).

**III. Order on Appeal.**

In the adversary proceedings, the Bankruptcy Court considered whether the 1993 income taxes owed by David and Linda Jones were nondischargeable pursuant to §523(a)(1)(C) of the Bankruptcy Code based on the IRS's assertion that the Debtors "made a fraudulent return or willfully attempted in any manner to evade or defeat such tax."

Title 11 U.S.C. §523(a)(1)(C) provides:

(a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt . . .
    (1) for a tax or a customs duty . . .
                             * * *
       (C) with respect to which the debtor made a fraudulent return or willfully attempted in any manner to evade or defeat such tax.[5]

The creditor bears the burden of proof that a particular claim is nondischargeable under §523(a). *In re Fretz*, 244 F.3d 1323, 1327 (11th Cir. 2001). In order to prove that the Section 523 exemption applies, the IRS must meet two requirements: "a conduct requirement (that the debtor sought 'in any manner to evade or defeat' his tax liability) and a mental state requirement (that the debtor did so willfully')." *In re Griffith*, 206 F.3d 1389, 1396 (11th Cir. 2000).

**IV. Analysis.**

Appellant, the IRS, argues on appeal that the Bankruptcy Court made two errors of law and one clear error of fact. First, the IRS argues that the Bankruptcy Court erred by improperly applying the legal standard applicable to a determination as to whether the

---

[5] 11 U.S.C. §523(a)(1)(C).

Joneses acted to evade or defeat his tax liability pursuant to §523(a)(1)(C). Second, the IRS argues that the Bankruptcy Court erred in failing to find that the Joneses fraudulently transferred two parcels of real estate for no consideration at a time he was aware of his indebtedness to the IRS and thereby acted intentionally to evade or defeat the tax. Finally, the IRS argues that the Bankruptcy Court erred because there is no evidence in the record to support a finding that the Joneses suffered personal injury damages in any amount.

  **A.**  **Application of Legal Standard Under §104.**

  Title 26 U.S.C. §104(a) governs the taxability of damages. Section 104(a)(2) provides that gross income does not include "the amount of any damages (other than punitive damages) received (whether by suit or agreement and whether as lump sums or as periodic payments) on account of personal physical injuries or physical sickness." 26 U.S.C. §104(a)(2). The applicable Treasury Regulation provides that the term "damages received (whether by suit or agreement)" means an amount received through prosecution of a legal suit or action based upon tort or tort type rights, or through a settlement agreement entered into in lieu of such prosecution. Treasury Regulations §1.104-1(c). The Supreme Court has interpreted the statute and regulation as establishing a two-prong test. There are two independent requirements that a tax payer must meet before recovery may be excluded under §104(2)(a). First, the tax payer must demonstrate that the underlying cause of action giving rise to the recovery is based upon tort or tort type rights; and second, the taxpayer must show that the damages were received on account of personal injuries or sickness. *See Commissioner v. Schleier*, 515 U.S. 323, 336-37 (1995).

The IRS has conceded that the Joneses suffered some degree of personal injury as a result of Southeast's conduct. The IRS takes issue, however, with the apportionment of the settlement proceeds (economic damages versus personal injury damages).

Based on testimony and evidence presented in the adversary proceedings, the Bankruptcy Court concluded that the Joneses sustained actual personal injuries as a result of Southeast's conduct. Further, the Bankruptcy Court examined the credibility of Mr. Jones's testimony and determined that the Joneses genuinely believed that the settlement proceeds were for their "personal injuries" and that the deductions were valid. As a result, the Bankruptcy Court found that the Joneses did not willfully attempt in any manner to evade or defeat the 1993 tax assessment and that their tax debt for that year was not excepted from discharge under 11 U.S.C. §523(a)(1)(C).

This Court may not set aside the Bankruptcy Court's findings of fact, whether based on oral or documentary evidence, unless such findings are clearly erroneous. Further, this Court must give due regard to the opportunity of the Bankruptcy Court to judge the credibility of the witnesses. Accordingly, this Court finds that there are sufficient facts in the record to support the Bankruptcy Court's findings that the Joneses did not willfully attempt in any manner to evade or defeat the 1993 tax assessment and that their tax debt for that year should not be excepted from discharge under 11 U.S.C. §523(a)(1)(C).

**B.     Fraudulent Transfers.**

The IRS also argues on appeal that the Bankruptcy Court erred in failing to find that the Joneses fraudulently transferred two parcels of real estate for no consideration at a time

when they were aware of their indebtedness to the IRS, and thereby, acted intentionally to evade or defeat the tax. The Bankruptcy Court found that the Joneses satisfactorily explained the two transfers of real property that occurred in 1999, and that the transfers do not evidence an attempt to evade tax liability.

Once again, this Court finds that there are sufficient facts in the record to support the Bankruptcy Court's findings that the transfers at issue do not evidence an attempt to evade tax liability.

### C.  Evidence of Personal Injury.

The IRS argues that the Bankruptcy Court erred because there is no evidence in the record to support a finding that the Joneses suffered personal injury damages in any amount. Interestingly enough, the IRS concedes that the Joneses suffered personal injuries at the hands of Southeast. Nevertheless, the IRS continues to insist that the settlement proceeds cannot be labeled as "personal injury damages" because the Amended Complaint filed in the Magic Toyota Lawsuit did not contain allegations or counts asserting a legal action based on tort. Mr. Jones has testified, however, that it was his understanding that although the Amended Complaint did not contain such allegations the settlement negotiations did concern the release of personal injury type claims (i.e. emotional distress, defamation, tortious interference). The Bankruptcy Court considered the credibility of Mr. Jones's testimony and found that the Joneses had sufficient reason to believe that the settlement funds were paid on account of their personal injuries.

The IRS has not met its burden of showing that the Bankruptcy Court's finding of fact was "clearly erroneous." Accordingly, this Court finds that there are sufficient facts in the record to support the Bankruptcy Court's finding that the Joneses suffered some personal injury damages.

It is therefore ORDERED AND ADJUDGED that:

1. The Bankruptcy Court's Findings of Fact, Conclusions of Law, and Memorandum Opinion (Dkt. #1-13) and Final Judgment (Dkt. #1-3) are **AFFIRMED**.

2. The clerk is directed to **CLOSE** this case and terminate any pending motions.

**DONE** and **ORDERED** in Tampa, Florida on January 7, 2008.

JAMES S. MOODY, JR.
UNITED STATES DISTRICT JUDGE

**Copies furnished to:**
Bankruptcy Court Judge  (Case #8:05-ap-486-PMG)
Counsel/Parties of Record

S:\Odd\2007\07-cv-515 bkr appeal 5.frm